**CIRCUIT CITY STORES, INC., Circuit City Stores West Coast, Inc. and Acme Commercial Corporation d/b/a Carmax the Auto Superstore, Plaintiffs,**

v.

**OFFICEMAX, INC., Defendant.**

**Civil Action No. 3:96cv401.**

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 20, 1996.

Gilbert E. Schill, Brian C. Riopelle, McGuire, Woods, Battle & Boothe, Richmond, VA, for Plaintiffs.

Henry N. Ware, Jr., Cook, Ware & Tuck, Glen Allen, VA, R. Terrance Rader, Rader, Fishman & Grauer, P.L.L.C., Bloomfield Hills, MI, for Defendant.

## MEMORANDUM OPINION

PAYNE, District Judge.

The plaintiffs (collectively "CarMax") instituted this action against OfficeMax, Inc. ("OfficeMax") by filing a Complaint pursuant to 28 U.S.C. § 2201, seeking a declaratory judgment that the use and/or registration of the CarMax trademarks is not a violation of any rights OfficeMax has pursuant to 15 U.S.C. §§ 1114, 1125(a). CarMax also asserts rights under the common law of unfair competition or infringement.[1] By its Counterclaim, OfficeMax asserts: trademark infringement under 15 U.S.C. § 114 (Count 1); unfair competition pursuant to 15 U.S.C. § 1125(a) (Count 2); federal trademark dilution under 15 U.S.C. § 1125 (Count 3); and unjust enrichment (Count 4).

Following discovery, CarMax moved for summary judgment on all of OfficeMax's counterclaims, asserting that each claim is barred by the doctrine of laches.[2] CarMax also seeks summary judgment on Count 3 of the Counterclaim, wherein OfficeMax seeks monetary damages and injunctive relief pursuant to the recently enacted Federal Trademark Dilution Act of 1995 (the "Dilution Act"), 15 U.S.C. § 1125(c), contending that the retroactive enforcement of the Dilution Act in this case would violate the rule established in *Landgraf v. USI Film Products, Inc.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Because there are genuine disputes over material facts, the Court denied the Motion For Summary Judgment with respect to the defense of bar pursuant to the equitable doctrine of laches. For the reasons which follow, the Court finds that the Dilution Act may not be applied and enforced retroactively in this action and therefore grants the motion for summary judgment on Count III.

## BACKGROUND

OfficeMax began promoting the "Office-Max" service mark in 1988. Over the past eight years, OfficeMax has grown from a fledgling business operated from the basement of its founder to a corporation with annual sales exceeding $3 billion. OfficeMax currently owns and operates so-called "superstores" offering lines of office products in approximately 550 locations throughout the country. The OfficeMax stores are in each of the four cities in which CarMax operates currently. OfficeMax owns 15 federal trademark registrations for marks formed by or incorporating "Max" as a suffix or a prefix. These include "OfficeMax," "CopiMax," and "QuickMax." OfficeMax claims to have spent more than $100 million to promote its marks.

---

1. CarMax was granted leave to file an Amended Complaint. Therein, CarMax added Count 2, which seeks the cancellation of three OfficeMax marks allegedly obtained through fraudulent disclosures to the Patent and Trademark Office. In response to the Amended Complaint, OfficeMax sought, and was granted, leave to file an Amended Answer and Counterclaim. Therein, OfficeMax included Count V of its Amended Counterclaim, which seeks the cancellation of CarMax's marks because of an alleged naked licensing agreement entered into by Circuit City Stores, Inc. Because the cancellation actions bear only a tangential relation to the basic issues presented by the Complaint, Answer and Counterclaims, the cancellation claims have been severed. Therefore, it is unnecessary to deal further with these claims at the present stage of the litigation.

2. Laches is an equitable defense which traditionally is pleaded by asserting that the opposing party is "in laches." The traditional plea has fallen into disuse in the rubrics of trademark and patent law and in those disciplines the plea is usually interposed by asserting that the opposing party is "barred" under the equitable doctrine of laches. The latter form, though technically incorrect, will be used here.

CarMax, a wholly-owned subsidiary of Circuit City, Inc., began operations in 1993. Currently, CarMax owns and operates five retail stores which sell and service used cars and trucks. The CarMax stores are located in Richmond, Virginia (opened in September 1993); Raleigh, North Carolina (opened in November 1994); Atlanta, Georgia (two stores opened in early 1995); and in Charlotte, North Carolina (opened in March 1996). CarMax currently owns a series of federal trademark registrations including "CarMax," and other marks incorporating "CarMax" or "Max." Since 1993, when it began using the CarMax name, CarMax has spent $12 million on advertising and promotion under the name CarMax and its other related "Max" marks. CarMax has recorded $370 million in gross sales since 1993, the amount increasing significantly in each year of operation.

In early 1996, CarMax announced its plans to start a "national roll-out" of approximately 90 stores located throughout the country. In September, 1996, Circuit City announced that it will "spin-off" up to twenty percent of CarMax to raise capital for the forthcoming expansion. On April 26, 1996, OfficeMax, which has been aware of CarMax since it began operations in 1993, became concerned about the announced expansion plans and sent CarMax a letter, claiming that CarMax was infringing its mark by employing "Car-Max" and other "Max" marks in a retail superstore format. This action followed immediately.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is to be rendered "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The rules further provide:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and of establishing, based on relevant portions of the record, that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.,* 828 F.2d 211, 216 (4th Cir.1987); *see also Catawba Indian Tribe v. South Carolina,* 978 F.2d 1334, 1338–39 (4th Cir.1992). "[W]here the non-moving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories and admissions. on file.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The moving party may also use affidavits to support its motion.

Once this initial showing under Rule 56(c) is made, the burden of production, but not persuasion, shifts to the nonmoving party. The non-moving party must go beyond the pleadings and, by citing its own affidavits or by citing "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* Opposition to a properly documented summary judgment motion may not be based solely on the pleadings. *Id.*

When "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;

the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis added). The non-moving party, however, "need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514. It is the function of the district court not to weigh the evidence, but to determine whether there is a genuine issue for trial, and "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2511 (citations omitted). Hence, summary judgment is appropriate if the evidence is "merely colorable" or "not significantly probative." *Id.* at pp. 249–50, 106 S.Ct. at 2511 (citations omitted). The district court must also "view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254, 106 S.Ct. at 2513.

Furthermore, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513. Summary judgment is appropriate only if, upon consideration of the record as a whole, a reasonable trier of fact could not find for the non-movant. *Allstate Financial Corp. v. Financorp, Inc.,* 934 F.2d 55, 58 (4th Cir.1991). But, where a faithful examination of the record establishes the absence of a genuine issue of material fact, it is "the affirmative obligation of the trial judge to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987); *see also Guinness PLC v. Ward,* 955 F.2d 875, 883 (4th Cir.1992). With these principles in mind, the Court will consider CarMax's Motion for Summary Judgment with respect to Count III of the Counterclaim.

## DISCUSSION

In Count III, OfficeMax asserts a claim under the Dilution Act which became effective January 16, 1996 as an amendment to the Lanham Act[3] and which created for the first time a federal claim for trademark dilution, as opposed to classic trademark infringement. The Dilution Act provides, in pertinent part:

> (c) Remedies for dilution of famous marks:
>
> (1) The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection.

15 U.S.C. § 1125(c).

The new federal claim for trademark dilution differs from traditional trademark theory in at least one very significant way: the plaintiff need not show likelihood of confusion between the trademarks at issue. *See* 15 U.S.C. § 1127 (defining "dilution" as "lessening the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of ... likelihood of confusion, mistake, or deception"); *see also Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.,* 924 F.Supp. 1559, 1573 (S.D.Cal.1996). The Dilution Act specifically makes actionable dilution through loss of distinctiveness, *Id.,* and the legislative history supports the conclusion that Congress also intended the Act to cover dilution through tarnishment. *See* 141 Cong.Rec. § 19310 (daily ed. Dec. 29, 1995) (statement of Sen. Hatch) ("[T]his bill is designed to protect famous trademarks from subsequent uses that blur the distinctiveness of the mark or tarnish or disparage it ..."); *see also Dr. Seuss Enterprises,* 924 F.Supp. at 1573.

Under the Dilution Act, the owners of "famous marks" are entitled to nationwide injunctive relief against uses that would tend to "dilute" the mark. 15 U.S.C. § 1125(c)(1). Monetary relief is also available, but only where the infringer "willfully intended to trade on the owner's reputation or to cause dilution of the famous mark." 15 U.S.C.

---

3. Lanham Trademark Act 15 U.S.C. § 1501 *et. seq.*

§ 1125(c)(2).[4] OfficeMax's counterclaim seeks both injunctive relief, barring future dilution of its marks through the use of the CarMax marks, and monetary damages for alleged intentional dilution since 1993. *See* Counterclaim ¶ 21.

CarMax asserts two grounds for summary judgment. First, CarMax argues that, under *Landgraf v. USI Film Products, Inc.*, 511 U.S. 244, 264–65, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994), the application of the Dilution Act would have an impermissible retroactive effect; and therefore that, as a matter of law, the Dilution Act is not applicable to conduct before it was enacted on January 16, 1996. Second, CarMax asserts that enforcing the Dilution Act in this case would be inconsistent with the "principles of equity," and thus inconsistent with the express language of the Dilution Act.

## I. The Legal Standard for Determining the Retroactive Application of a Statute.

*Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), is the Supreme Court's most recent and definitive discussion of the legal principles which govern retroactive application of new statutory provisions.[5] As does OfficeMax here, the petitioner in *Landgraf* sought the application of a new statute (the Civil Rights Act of 1991) to conduct occurring before that statute was enacted. The Supreme Court refused to make that statute "applicable to

conduct that occurred, and to cases that were filed, before the Act's effective date." *Id.*, 511 U.S. at 250, 114 S.Ct. at 1489.

In *Landgraf,* the Supreme Court recognized the "apparent tension" between two "generally applicable rules for interpreting statutes that do not specify their temporal reach." *Id.* at 264, 114 S.Ct. at 1496.

The first is the rule that 'a court is to apply the law in effect at the time it renders its decision' [*quoting Bradley v. Richmond School Bd.*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1979) ]. The second is the axiom that '[r]etroactivity is not favored in the law,' and its interpretive corollary that 'congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result' [*quoting Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) ].

*Id.* at 264, 114 S.Ct. at 1496. However, the Supreme Court made clear that the presumption against retrospective application maintains primacy over the former canon of interpretation. *Id.* at 276, 114 S.Ct. at 1503 ("[W]e now make it clear that *Bradley* did not alter the well-settled presumption against application of the class of new statutes that would have genuinely 'retroactive' effect").

"The presumption against retrospective legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Id.* at 265,

---

4. Subsections 1125(c)(1)(A)–(H) provide various factors to determine whether a mark qualifies as a "famous mark." At this stage of the litigation, the issue whether OfficeMax's marks are "famous marks" within the Dilution Act has not been raised by either party.

5. The Fourth Circuit recently has applied *Landgraf* in *Woolf v. Bowles*, 57 F.3d 407, 410 (4th Cir.1995), wherein the Court of Appeals refused to apply retroactively Section 114 of the Civil Rights Act of 1991, which contains an express waiver of federal immunity from payment of interest on backpay damages assessed under Title VII. The Court of Appeals noted that "requiring the federal government to pay interest would disrupt the longstanding expectation created by the no-interest rule, and thus unquestionably would impose an important new legal burden on the federal government." *Id.*

Similarly, in *Theard v. Glaxo, Inc.*, 47 F.3d 676, 679 (4th Cir.1995), the Fourth Circuit

adopted the *Landgraf* rule that "absent a clear congressional statement to the contrary, a new statutory provision should not be applied retroactively if in so doing it would impose new legal consequences for events completed before the statute's enactment." Applying this rule to Section 101 of the Civil Rights Act of 1991, the Court of Appeals held that "[b]ecause the Court, in *Landgraf* defined the presumption against retroactivity in terms of the underlying conduct, it is evident that the Court, in regard to Section 101, understood a case to arise when the conduct occurred. In short, section 101 does not apply to cases in which the conduct giving rise to the suit occurred before November 21, 1991, regardless of when the claim was filed." *Id.; see also Preston v. Commonwealth of Virginia ex rel. New River Community College*, 31 F.3d 203 (4th Cir. 1994).

114 S.Ct. at 1497; *see also Id.* at 270, 114 S.Ct. at 1499 ("Since the early days of this Court, we have declined to give retroactive effect to statutes burdening private rights ...."). The Supreme Court explained that retroactive application of legislation is disfavored because:

> The Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration. Its responsibility to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals.

*Id.* at 266, 114 S.Ct. at 1497.

In *Landgraf,* the Supreme Court held that courts must begin the retroactivity analysis with an examination of the language of a statute to determine whether it reflects the "clear intent" of Congress with respect to retroactivity. *See Id.* at 272, 280, 114 S.Ct. at 1501, 1505.[6] "Where the congressional intent is clear, it governs." *Id.* at 264, 114 S.Ct. at 1496 (*quoting Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 837–38, 110 S.Ct. 1570, 1576–78, 108 L.Ed.2d 842 (1990)). If the statute does not evince a clear congressional intent, a court must then determine whether each provision of the act at issue "attaches new legal consequences to events completed before its enactment" as judged by "familiar considerations of fair notice, reasonable reliance and settled expectations ...." *Landgraf,* 511 U.S. at 270, 114 S.Ct. at 1499. Under *Landgraf,* a statute would have "retroactive effect" if it "impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed." *Id.* at 280, 114 S.Ct. at 1505. If the statute has such retroactive effect, the traditional presumption against retroactive application prohibits the retroactive application of the statute "absent clear congressional intent" to the contrary.

*Id.*[7]

Both the statutory language and the *Landgraf* analysis counsel against retroactive application of the Dilution Act here.

## II. The Federal Trademark Dilution Act Is Not Applicable to CarMax's Conduct.

### A. The Language of the Dilution Act.

The language of the statute does not reflect the intent of Congress with respect to retroactivity. Likewise, the legislative history of the Dilution Act is silent respecting congressional intent on that matter.

*Landgraf* directs application of the presumption against retroactivity unless clear Congressional intent favors retroactivity. 511 U.S. at 280–81, 114 S.Ct. at 1505. Thus, under *Landgraf,* the Dilution Act is presumptively inapplicable to CarMax's pre-enactment conduct because there is no clear Congressional intent to make its proscriptions applicable retroactively.

### B. Retroactive Effect of the Dilution Act.

Because the Dilution Act does not evince a clear Congressional intent, it is necessary, under *Landgraf,* to determine whether its provisions "attach[ ] new legal consequences to events completed before its enactment." 511 U.S. at 270, 114 S.Ct. at 1499. A statute has "retroactive effect" if it "impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed." *Id.*

In *Landgraf,* the Supreme Court recognized that "[a]ny test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity." *Id.* at 270, 114 S.Ct. at 1499. This action presents one of those "hard

---

6.  *See also Id.* at 272–73, 114 S.Ct. at 1501 ("Requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing interests").

7.  This is so even where it is asserted "that retroactive application of a new statute would vindicate its purpose more fully." *Landgraf,* 511 U.S. at 285, 114 S.Ct. at 1507. That consideration is "not sufficient to rebut the presumption against retroactivity." *Id.*

cases" in which the application of the *Landgraf* test "leave[s] room for disagreement." However, as the Supreme Court recognized in *Landgraf*, "retroactivity is a matter on which judges tend to have sound instinct[s], and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance." *Id.* (internal citations and quotations omitted).

Whether the Dilution Act applies retroactively to create a cause of action with respect to behavior that occurred before its enactment is an issue of first impression in this circuit. Indeed, to date, no other district court has addressed the issue by published opinion. There is, however, significant language in *Landgraf* supporting CarMax's position that the enforcement of the Act in this action would give the Dilution Act "retroactive effect." In *Landgraf,* the Court explained that:

> Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.... *In a free and dynamic society, creativity in both commercial and artistic endeavors is fostered by a rule of law that gives people confidence about the legal consequences of their actions.*

*Id.* at 265–66, 114 S.Ct. at 1497 (emphasis added). The Court then underscored the justifications for the presumption against retroactivity:

> [T]he ban on retrospective legislation embraced all statutes, which, though operating only from their passage, affect vested rights and past transactions.... [E]very statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective.

*Id.* at 268–69, 114 S.Ct. at 1499 (internal quotations and citations omitted). Signifi-

cantly, the Court recognized that "[t]he largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." *Id.* at 271, 114 S.Ct. at 1500.

That is precisely the situation here because the Dilution Act creates a new cause of action—a federal anti-dilution claim—which did not exist from September 1993, when CarMax chose its service marks and opened its first store, until January 16, 1996, when the Dilution Act took effect. During this two-and-one-half year period before this new claim was created, CarMax spent millions of dollars advertising its marks and expanding its business operations. The actions of CarMax during that period were entirely proper insofar as federal law was concerned; and its actions were taken pursuant to, and in furtherance of, settled commercial expectations and vested intellectual property rights.

Before the adoption of the Dilution Act, there was no federal claim for use of a trademark unless it presented a "likelihood of confusion" with a senior mark. 15 U.S.C. §§ 1114, 1125. Under the Dilution Act, however, once a mark is determined to be "famous," there is no requirement that another's use of a similar mark be confusing or deceptive, or that it be used on a competing good. Thus, the Dilution Act significantly expanded the reach of the Lanham Act by creating new obligations, imposing new duties, and attaching new disabilities with respect to marks already adopted. Whether forced to pay money damages or to suffer an injunction barring future use of the CarMax marks, the effect on CarMax of applying the Dilution Act is effectively the same—CarMax would lose its very identity, achieved as the result of conduct and commercial investment, which was perfectly lawful at the time. However, the enforcement of the Dilution Act here would violate the "considerations of fairness" which are the fundamental underpinning of *Landgraf.* 511 U.S. at 266, 114 S.Ct. at 1497.

Although no court has decided this precise issue, *Gordon & Breach Science Pubs. S.A. v. Am. Inst. of Physics,* 859 F.Supp.

1521, 1530–31 (S.D.N.Y.1994), is instructive. In *Gordon*, the parties were both publishers of scientific journals. The plaintiff alleged, *inter alia*, that articles published by the defendant rating defendant's journals higher than plaintiff's journals disparaged plaintiff's products and thus constituted misleading advertising under the Lanham Act. The plaintiff sought both money damages and injunctive relief barring defendants from publishing any promotional matter using defendant's studies to disparage the plaintiff's journals. Defendant's articles were written in 1986 and 1988. In 1988, after the articles at issue were published, the Lanham Act was amended to make actionable the disparagement of a competitor's products. Defendant moved to dismiss, arguing that the amendments to the Lanham Act should not be enforced retroactively.

Citing *Landgraf*, the court in *Gordon* held that the 1988 amendments to the Lanham Act did not apply to past conduct.

> The 1988 amendments to the Lanham Act clearly impose new liabilities insofar as they extend the reach of Section 43(a) to trade libel and product disparagement. [Plaintiff] has presented no evidence that Congress intended the 1988 amendments to apply retroactively. Thus, we conclude that the provision of the amendments which extends the reach of Section 43(a) to include trade libel and product disparagement should not be given retroactive effect, and accordingly it does not govern [defendant's] 1986 and 1988 articles.

859 F.Supp. at 1531. Thereupon, the court dismissed the plaintiff's actions for both monetary damages and injunctive relief. *Id.*

This action presents the same retroactivity concerns addressed in *Gordon*. Similar to *Gordon*, this action involves a claim by OfficeMax for monetary and injunctive relief based on past and continuing behavior which, when initiated, was not illegal and thus gave rise to no federal claim of the sort advanced in Count III of the Counterclaim. Under similar circumstances, the court in *Gordon* held that *Landgraf* barred the enforcement of the 1988 amendments to the Lanham Act. For the same reasons, the 1995 amendment to the Lanham Act, the Dilution Act, is unenforceable in this action under *Landgraf*.

Notwithstanding the persuasive arguments against the retroactive application of the Dilution Act, OfficeMax maintains that the application of the statute to CarMax's conduct would not violate the principles of *Landgraf*.

OfficeMax begins with the assertion that it seeks only *prospective* injunctive relief, affecting only CarMax's *future* activities. That, of course, is in explicit contradiction to the text of the Counterclaim where OfficeMax alleges intentional and willful dilution on the part of CarMax, and seeks:

> such damages, statutory or otherwise, together with prejudgment interest thereon, as defendant has sustained, as a consequence of plaintiff's wrongful acts.

This modification appears to be a concession by OfficeMax that, to the extent that the Dilution Act allows recovery of monetary damages for intentional dilution, it cannot be applied to behavior occurring before enactment without violating *Landgraf*. *See* Office-Max's Brief In Opposition To CarMax's Motion For Summary Judgment at 20 ("[W]hen a newly enacted statute provides for injunctive relief against actions in the future, as opposed to expanded damages for past-completed acts, the application of the statute is not retroactive"). To the extent then that the Counterclaim seeks monetary damages under the Dilution Act for CarMax's conduct predating January 16, 1996, even OfficeMax seems to concede that the claim is barred under *Landgraf*. This is so because applying the Dilution Act to permit recovery of monetary damages here would clearly have "retroactive effect" in that it would "increase a party's liability for past conduct" already completed. 511 U.S. at 280, 114 S.Ct. at 1505.

OfficeMax argues, however, that enforcing the injunctive provisions of the Dilution Act would not have a retroactive effect because CarMax's conduct is not completed, past conduct, but is, instead on-going and continuous,

in light of CarMax's recent announcement of its plans to expand into the national market.[8]

OfficeMax interprets *Landgraf* as standing for the proposition that forward-looking, injunctive relief is not subject to the *Landgraf* non-retroactivity rule. In support of its interpretation, OfficeMax relies on the following passage from *Landgraf*:

> Even absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations. When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive.

*Id.* at 273, 114 S.Ct. at 1501. This language, says OfficeMax, means that when a newly enacted statute provides for injunctive relief against actions in the future, the application of the statute is not retroactive, and the statute should be enforced with respect to pre-enactment conduct which is likely to continue.

That argument goes too far because the cited passage from *Landgraf* does not stand for the proposition that the enforcement of a statute providing for injunctive relief can *never* be impermissibly "retroactive." Rather, the dicta on which OfficeMax relies speaks solely to cases in which the relevant conduct was *already illegal* before the effective date of the intervening statute. Indeed, each case cited by the Supreme Court in support of the passage upon which OfficeMax relies involved conduct which was illegal *before the enactment* of the new statute. *See Duplex Printing Press Co. v. Deering,* 254 U.S. 443, 464, 41 S.Ct. 172, 175, 65 L.Ed. 349 (1921) (enforcing the Clayton Act against defendants where "defendants had agreed to do and were endeavoring to accomplish the very thing pronounced unlawful by this court in *Loewe v. Lawlor,* 208 U.S. 274 [28 S.Ct.

301, 52 L.Ed. 488] ..."); *American Steel Foundries v. Tri–City Central Trades Council,* 257 U.S. 184, 203, 42 S.Ct. 72, 76, 66 L.Ed. 189 (1921) (applying section 20 of the Clayton Act to conduct which was previously illegal where the statute "introduce[d] no new principle into the equity jurisprudence of th[e] courts").

In such circumstances, the application of purely prospective injunctive relief raises no retroactivity concerns because where the past conduct is illegal, the enforcement of the intervening statute merely provides a new remedy with respect to that conduct, and does not act to significantly "sweep away settled expectations." *Landgraf,* 511 U.S. at 266, 114 S.Ct. at 1497. Here, by contrast, CarMax's actions were *not* illegal under federal law before the effective date of the Dilution Act. Therefore, any injunction against CarMax would arise as the result of a "new cause of action" for conduct which federal law "afforded no relief at the time of the conduct." *Landgraf,* 511 U.S. at 281–82, 114 S.Ct. at 1506.

OfficeMax next argues that *Landgraf* is inapplicable here because CarMax was not truly "surprised" by the Dilution Act for the reason that twenty-three states had dilution statutes in place when the federal statute was adopted. OfficeMax also asserts that many of the state statutes resembled those of the Dilution Act. OfficeMax alleges that CarMax's highly competent counsel "undoubtedly" would have informed it that state dilution statutes existed in nearly half of the states, including Georgia where CarMax has two facilities. Moreover, as OfficeMax observes, the Dilution Act has been discussed, debated, and written about by various trademark attorneys and legislators since the late 1980's.[9] OfficeMax contends that, under

**8.** The Court in *Landgraf* repeatedly referred to past, completed conduct in its justification of the presumption of nonretroactivity. *See, e.g. Landgraf,* 511 U.S. at 266, 114 S.Ct. at 1497 (referring to "the 'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place'") (*quoting Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 855, 110 S.Ct. 1570, 1586, 108 L.Ed.2d 842 (1990)); *Id.* at 268–69, 114 S.Ct. at 1499 (explaining that a court must decide wheth-

er a statute "attaches new legal consequences to events completed before its enactment").

**9.** The serious push for a federal trademark dilution law began in 1987 with the publication of "The United States Trademark Association Review Commission Report and Recommendations to USTA President and Board of Directors." 77 Trademark Rep. 375 (1987), reprinted at 5 Jerome Gilson, *Trademark Protection and Practice* at VI–57 (1955). In that report, the Commission proposed the adoption of a new federal trade-

these circumstances, CarMax was not unduly surprised by the Dilution Act and that its "settled commercial expectations" were not abruptly dashed. Those arguments are unpersuasive.

First, there is no evidence respecting the expectations of CarMax, so the Court cannot decide on the basis of actual knowledge. Second, and more importantly, expectations, in retroactivity jurisprudence, are those grounded in the law controlling conduct at the time it occurred. In that regard, when CarMax commenced operations, less than half of the states had recognized a cause of action for dilution. And, significantly, there was *no such federal cause of action.* As OfficeMax recognizes in its papers, the federal statute was designed to harmonize and nationalize this claim. In doing so, however, the federal statute varied in important respects from the body of state dilution law existing at its passage.[10] For instance, many state courts have required a finding of confusion before dilution will be found.[11] And, as explained previously, a finding of confusion is not required under the Dilution Act. 15 U.S.C. § 1127.' Moreover, owners of locally famous marks in states like Virginia, which do not have trademark dilution laws, might have had no recourse against the actions of businesses using their marks when confusion was not likely. Petershack, *1995 Federal Trademark Dilution Act,* 69 Wisc. Lawyer at 21. Finally, state dilution statutes (with the sole exception of Connecticut's) in effect in 1993 when CarMax chose, and began to use its name, provided only for injunctive relief. Thus, CarMax was justified in commencing business over two years before the enactment of the Dilution Act with the settled commercial expectation that no dilution claim for damages, let alone a *federal* claim, existed.

These significant distinctions between the state laws in effect in 1993 and the Dilution Act preclude the argument that in 1993 the commercial expectations of CarMax ought to have been measured by the form of the Dilution Act passed two years later. In any event, as explained above, this argument fails for the more fundamental reason that the commercial expectations component of the *Landgraf* analysis must focus on pre-existing expectations at the time of the past conduct, not at the time of enactment of the statute sought to be given retroactive effect.

Guided by the "familiar considerations of fair notice, reasonable reliance, and settled expectations," *Landgraf,* 511 U.S. at 270, 114 S.Ct. at 1499, the Court finds that enforcing the Dilution Act in this action would have an impermissible retroactive effect and would run afoul of the teaching and holding of *Landgraf.*

That conclusion is underscored by the express language of the Dilution Act which, like *Landgraf,* instructs courts to interpret the statute in light of familiar equitable concerns and considerations of fairness.[12] The principles of equity and fairness called into play by the text of the Dilution Act, as well as by the fundamental premise of the *Landgraf* decision, lead inevitably to the judgment that the enforcement of the Dilution Act in this action would have an impermissible retroactive effect.

As previously discussed, when CarMax chose its marks in September 1993, there

---

mark dilution law. Petershack, *1995 Federal Trademark Dilution Act,* 69 Wisc. Lawyer 18, 20 (July 1996).

**10.** Robert V. Petershack, *1995 Federal Trademark Dilution Act,* 69 Wisc. Lawyer 18, 20 (July 1996).

**11.** *See, e.g. Cue Publishing Co. v. Colgate–Palmolive Co.,* 45 Misc.2d 161, 256 N.Y.S.2d 239 (N.Y.Supp.), *aff'd,* 23 A.D.2d 829, 259 N.Y.S.2d 377 (1965); *Alfred Dunhill of London, Inc. v. Scoa Indus. Inc.,* 187 U.S.P.Q. 49, 57, 1975 WL 21098 (S.D.N.Y.1975); *Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 49 (2nd Cir.1978),

*cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

**12.** *See Landgraf,* 511 U.S. at 270, 114 S.Ct. at 1499 (instructing courts to apply their "sound instincts" and "familiar considerations of fair notice, reasonable reliance, and settled expectations"); *Id.* at 277, 114 S.Ct. at 1503 (explaining the decision in *Bradley v. Richmond School Bd.,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), as resting in part on "equitable" concerns); 15 U.S.C. § 1125(c)(1) (the application of the Dilution Act is "subject to the principles of equity" and conditioned "upon such terms as the court deems reasonable").

was no federal law prohibiting use of a trademark that, although not likely to cause consumer confusion, might "dilute" a senior mark used in an entirely different market for an entirely different class of products. Relying on the law as it existed in 1993, CarMax selected and, for over two years, advertised and promoted, a valid legal mark. Enforcing the Dilution Act under these circumstances would be tantamount to "reaching back" to deny CarMax the substantial benefits its past, legal conduct has reaped. It would be manifestly inequitable to apply a dilution theory to require CarMax to abandon its investment and the accompanying "good will" associated with its name, and to start all over at great expense, in light of the new law which departs from the traditional federal "likelihood of confusion" standard. The principles of equity and *Landgraf* teach that CarMax was entitled to believe, and to act on the belief, that it could introduce a chain of used car superstores, adopt and register a service mark that incorporated the suffice "Max," and commence doing business under that mark, all without facing a federal dilution claim from a non-competing office supplies seller. If OfficeMax has a federal claim, it must be measured under the law of infringement and the confusion standard, not under the dilution concept created by the Dilution Act.

It may be true, as OfficeMax forcefully argues here, that retroactive application of the Dilution Act would vindicate its purpose more fully. "That consideration, however, is not sufficient to rebut the presumption against retroactivity." *Landgraf*, 511 U.S. at 285–86, 114 S.Ct. at 1508; *see also Satcher v. Netherland*, 944 F.Supp. 1222, 1247 (E.D.Va. 1996). In *Landgraf*, the Supreme Court recognized that:

> Statutes are seldom crafted to pursue a single goal, and compromises necessary to their enactment may require adopting means other than those that would most effectively pursue the main goal. A legislator who supported a prospective statute might reasonably oppose retroactive application of the same statute.

13. The parties agree that there are no factual issues in dispute with respect to the trademark

*Id.* Accordingly, the Supreme Court repeatedly has enforced the presumption against retroactivity, and *Landgraf* puts the onus on Congress to state clear contrary intent. It did not do so, and the courts may not retroactively enforce the Dilution Act on facts such as those presented here.

### CONCLUSION

For the reasons set forth above, CarMax's Motion For Summary Judgment as to Count III of the Counterclaim is granted as a matter of law.[13]

It is so ORDERED.