VIACOM, INC., et al., Plaintiffs,

v.

INGRAM ENTERPRISES, INC.,
et al., Defendants.

No. 94–0474–CV–S–RGC.

United States District Court,
W.D. Missouri,
Southern Division.

March 21, 1997.

Gregory J. Ikonen, Marcia B. Paul, Kay, Collyer & Boose, New York City, Basil T. Webb, Don M. Bradley, Shook, Hardy & Bacon, Kansas City, MO, for Plaintiffs.

Thomas Y. Auner, Springfield, MO, for Defendants.

**ORDER**

RUSSELL G. CLARK, Senior District Judge.

This matter comes before the Court on sua sponte motion by the Court to reconsider its Order of November 12, 1996 wherein it denied defendants' motion to dismiss Count VIII of plaintiffs' Second Amended Complaint. Also before the Court is defendants' motion for extension of time to file its suggestions in opposition to summary judgment regarding Count VIII.

By letter, defendants' counsel informed the Court of a decision in the Eastern District of Virginia titled *Circuit City Stores, Inc. v. OfficeMax,* 949 F.Supp. 409 (E.D.Va.1996), where the district court granted summary judgment on facts highly similar to the case at bar involving the Federal Dilution Act, 15 U.S.C. § 1125(c). Consequently, this Court gave both plaintiffs and defendants an opportunity to address the issues involved in the *Circuit City* case before it reconsidered defendants' motion to dismiss Count VIII of plaintiffs' Second Amended Complaint involving the anti-dilution claim. Both sides have filed briefs regarding the *Circuit City* case and the Court will now review its earlier decision denying the motion to dismiss Count VIII of the Second Amended Complaint.

When defendants' filed their earlier motion to dismiss as well as their motion to reconsider, they set forth various arguments as to why the Court should dismiss Count VIII which was the claim based on the Federal Dilution Act, 15 U.S.C. § 1125(c) ("Dilution Act"). The Dilution Act became effective January 16, 1996 as an amendment to the Lanham Trademark Act, 15 U.S.C. § 1501 *et. seq.* One of those arguments concerned the retrospective application of the Dilution Act to the instant facts. To the Court's knowledge, the issue at hand is one of first impression in the Eighth Circuit.

The Court denied defendants' motion to dismiss because, among other reasons, defendants provided no persuasive legal authority allowing the Court to grant such a motion. However, as mentioned above, in late 1996 the district court for the Eastern District of

Virginia issued an opinion with facts highly similar to those in the case at bar. The district court granted summary judgment to the plaintiffs based on a counterclaim by defendants alleging violation of the Dilution Act. In short, the Court believes the *Circuit City* opinion to be correct concerning its analysis of the retrospective application of the Dilution Act and consequently does not believe the Act should apply retroactively in the instant case. Therefore the Court will grant defendants' motion to reconsider and will dismiss Count VIII of plaintiffs' Second Amended Complaint regarding the Dilution Act. The Court will now set forth its reasoning below.

In passing on a motion to dismiss, a court must view the facts alleged in the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Toombs v. Bell*, 798 F.2d 297, 298 (8th Cir.1986). The court should not grant a motion to dismiss merely because the complaint does not state with precision every element of the offense necessary for recovery. 5 Wright & Miller, *Federal Practice and Procedure:* Civil, Sec. 1216 at 120 (1969). A complaint is sufficient if it contains "allegations from which an inference can be drawn that evidence on these material points will be introduced at trial." *Id.* at 122–123. Moreover, a court should not dismiss unless it "appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, supra*, 355 U.S. at 45–46, 78 S.Ct. at 102. Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir.1982). With this standard in mind, the Court turns to an examination of plaintiffs' complaint.

In the instant case, plaintiffs obtained their first BLOCKBUSTER registration in October of 1986. Defendant Ingram Enterprises, Inc. obtained its BLOCKBUSTER registration in May of 1992 based upon an August,

1990 application. Again, the Dilution Act came into effect January 16, 1996 clearly subsequent to either parties' obtaining their respective BLOCKBUSTER marks. The issue to be addressed here is whether a junior user's mark can be enjoined by the Federal Dilution Act which was enacted subsequent to the junior user's obtaining of that mark. As mentioned above, this same issue was tackled by the district court in *Circuit City Stores, Inc., v. OfficeMax, Inc.*, 949 F.Supp. 409 (E.D.Va.1996). There the court found the Dilution Act could not be applied retroactively and granted summary judgment to that effect under facts similar to the case at bar.

In *Circuit City*, the plaintiffs were doing business as CarMax, a subsidiary of Circuit City, Inc. CarMax owns and operates five retail stores which sell and service used cars and trucks. *Id.* at 411. OfficeMax owns and operates "superstores" offering lines of office products in 550 locations throughout the country. *Id.* at 410. OfficeMax brought counterclaims one of which alleged violation of the Dilution Act. Both marks in question in *Circuit City* were federally registered prior to the Dilution Act's enactment on January 16, 1996 which is the same situation under the instant facts.

The *Circuit City* court began its discussion by stating the Dilution Act's remedial provisions. The Dilution Act provides, in pertinent part:

(c) **Remedies for dilution of famous marks:**

(1) The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection.

\*　　\*　·　\*　　\*　　\*　　\*

15 U.S.C. § 1125(c).

Under the Dilution Act, a party successful in showing its mark is being "diluted" is entitled to relief in the form of a nationwide

injunction. Monetary damages are also recoverable where the infringer "willfully intended to trade on the owner's reputation or to cause dilution of the famous mark." 15 U.S.C. § 1125(c)(2). As stated in *Circuit City,* subsections 1125(c)(1)(A)-(H) provide various factors to determine whether a mark qualifies as a "famous mark." In the instant case, it should be noted plaintiffs are requesting both the nationwide injunction and monetary damages.

The *Circuit City* court then began discussion regarding the legal standard for determining whether a statute should be applied retroactively. The Supreme Court's most recent decision on the issue is *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Defendants here, as did the defending party CarMax in *Circuit City,* argue allowing a remedy of an injunction and/or damages would be in contravention of the Supreme Court's holding in *Landgraf.* In *Landgraf,* the Supreme Court refused to make the statute in that case "applicable to conduct that occurred, and to cases that were filed, before the Act's effective date." *Landgraf,* 511 U.S. at 250, 114 S.Ct. at 1489. It should be noted Eighth Circuit has applied the holding of *Landgraf* in *Maitland v. Univ. of Minnesota,* 43 F.3d 357 (8th Cir.1994).

The *Circuit City* court noted the Supreme Court's finding that there is a presumption against retrospective application when interpreting statutes. *Id.* at 413. The *Circuit City* court then examined the analysis mandated by *Landgraf* in determining whether a statute should be applied retroactively.

*Landgraf* first directs a court to examine the language of a statute "to determine whether Congress has expressly prescribed the statute's proper reach." *Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505. If Congress has not expressly set forth whether the statute is to be applied retroactively, "the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* After setting forth the *Landgraf* test, the *Cir-*

*cuit City* court applied the test to the facts of that case in relation to the Dilution Act.

The court first noted "[t]he language of the statute does not reflect the intent of Congress with respect to retroactivity. Likewise, the legislative history of the Dilution Act is silent respecting congressional intent on that matter." *Circuit City,* 949 F.Supp. at 414. The court proceeded: "*Landgraf* directs application of the presumption against retroactivity unless clear Congressional intent favors retroactivity. Thus, under *Landgraf,* the Dilution Act is presumptively inapplicable to CarMax's pre-enactment conduct because there is no clear Congressional intent to make its proscriptions applicable retroactively." *Id.*

The court next proceeded to the second step of the *Landgraf* test which was to determine whether the Dilution Act "attaches new legal consequences to events completed before its enactment." *Id.* (citing *Landgraf,* 511 U.S. at 270, 114 S.Ct. at 1499). After providing much justification for its decision, the court then determined application of the Dilution Act enjoining CarMax from using its marks would indeed increase CarMax's liability for its past conduct or impose new duties with respect to transactions it had already completed. *Circuit City,* 949 F.Supp. at 415. The court held this especially in light of the fact that under the Dilution Act, CarMax might also have been found liable for monetary damages. The court found "[t]he actions of CarMax during [the] period [from when it began using its mark until the effective date of the Dilution Act] were entirely proper insofar as federal law was concerned; and its actions were taken pursuant to, and in furtherance of, settled commercial expectations and vested intellectual property rights." *Id.* The court further noted that:

the Dilution Act significantly expanded the reach of the Lanham Act by creating new obligations, imposing new duties, and attaching new disabilities with respect to marks already adopted. Whether forced to pay money damages or to suffer an injunction barring future use of the Car-Max marks, the effect on CarMax of applying the Dilution Act is effectively the same—CarMax would lose its very identi-

ty, achieved as the result of conduct and commercial investment, which was perfectly lawful at the time. However, the enforcement of the Dilution Act here would violate the "considerations of fairness" which are the fundamental underpinning of *Landgraf.*

*Id.* (citing *Landgraf,* 511 U.S. at 265, 114 S.Ct. at 1497).

The *Circuit City* court went on to dispatch the various arguments asserted by OfficeMax but ultimately declared that under the facts of that case, application of the Dilution Act to CarMax would violate the holding of *Landgraf* and would have an impermissible retroactive effect. *Id.* at 416–417.

The Court believes the analysis used by the *Circuit City* court was correct in all respects. Moreover, the factual scenarios between *Circuit City* and the case at bar are highly similar as discussed above. Again, both in *Circuit City* and here, the junior users obtained and federally registered their respective marks before the enactment of the Dilution Act. Both parties bringing claims under the Act sought both injunctive and monetary relief. The Court finds as did the court in *Circuit City,* that application of the Dilution Act violates the holding of *Landgraf* and is unenforceable under the instant facts. "Enforcing the Dilution Act under these circumstances would be tantamount to 'reaching back' to deny [defendants] the substantial benefits [their] past, legal conduct has reaped." *Id.* at 419.

Plaintiffs attempt to distinguish the facts of *Circuit City* and the instant case. Their first argument is that here, defendants had no "settled expectations" which could be upset by a prospective injunction under the Dilution Act and could not have reasonably relied on the conclusion that their prior conduct was permissible. Moreover, plaintiffs also expressly emphasize defendants' home state of Missouri possesses an anti-dilution statute enacted in 1973 which provides for injunctive relief even in the absence of a

likelihood of confusion.[1] *See Hallmark Cards Inc. v. Hallmark Dodge Inc.,* 634 F.Supp. 990, 997 (W.D.Mo.1986).

This argument falls short for various reasons. First and most importantly, as stated in *Circuit City* when essentially the same argument was raised there, there was no federal anti-dilution statute in effect at the time defendants' conduct took place. The Federal Anti–Dilution Act varies considerably from the Missouri anti-dilution statute. First, the Missouri statute does not provide for a nationwide injunction as does the Federal Dilution Act. Second, the Missouri statute does not provide for monetary relief as does the Federal Dilution Act. Significantly, plaintiffs are asking in excess of $1,000,000 in damages in their dilution claim. Thus even though it is arguable defendants did not have reasonable expectations for their conduct in Missouri, in no way could they have expected that at the time they registered their marks they would have been subject to a nationwide injunction at minimum and also possibly liable in excess of $1,000,000 in monetary damages upon the requisite showing of willful infringement. Moreover, it should be noted in the *Circuit City* case, one of the states in which CarMax was doing business, namely Georgia, had an anti-dilution statute in effect and the *Circuit City* court found this fact of no import. Consequently this argument fails.

Plaintiffs next raise the argument that because the injunctive relief operates as to prospective conduct only, it does not violate the holding of *Landgraf.* The court in *Circuit City* did not find this same argument persuasive. Plaintiffs provides little case law in support of this position and the Court does not find merit with this argument in their brief.

In conclusion, the Court concurs with the legal conclusion and findings of the court in *Circuit City.* Moreover and more importantly, under the facts of this case, application of the Federal Dilution Act would have an im-

---

1. Missouri's anti-dilution statute, RSMo § 417.061, provides: 1. Likelihood of injury to business reputation or dilution of the distinctive quality of a mark registered under sections 417.005 to 417.066, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

permissible retroactive effect and therefore the Court will reconsider its earlier Order of November 12, 1996 and will dismiss Count VIII of plaintiffs' Second Amended Complaint. Moreover, because Count VIII will be dismissed, defendants' motion for extension of time will be denied as moot. Accordingly, it is

ORDERED defendants' motion for reconsideration is granted and Count VIII of plaintiffs' Second Amended Complaint is dismissed; and it is further

ORDERED defendants' motion for extension of time is denied as moot.

