**SAKS & COMPANY**

v.

**Beatrice HILL, d/b/a Sacks
Thrift Avenue.**

**Civil No. 93–578B (LSP).**

United States District Court,
S.D. California.

Dec. 27, 1993.

Gibson, Dunn & Crutcher Meryl L. Young, San Diego, CA, Cooper & Dunham, Norman H. Zivin, Donna A. Tobin, New York City, for plaintiff.

Todd D. Jones, Klinedinst, Fliehman, McKillop & Jones, a Professional Corp. San Diego, CA, for defendant Beatrice Hill, dba Sacks Thrift Avenue.

## MEMORANDUM OF DECISION

EGINTON, Senior District Judge.

Plaintiff brings this action under the Lanham Trade–Mark Act, 15 U.S.C. §§ 1114(1) and 1125(a), and under the California Business and Professions Code, §§ 17200–17208, 17500, 17535, and 14330. The complaint alleges that defendant's use of the mark "Sacks Thrift Avenue" constitutes trademark infringement and unfair competition under federal law, and dilution and unfair competition under California law. Plaintiff seeks to permanently enjoin defendant from using the mark "Sacks Thrift Avenue," as well as an award of attorneys' fees. After two days of testimony and submission of briefs, the court enters the following Findings of Fact and Conclusions of Law pursuant to Fed.R.Civ.P. 52(a).

### Findings of Fact

Plaintiff, Saks & Company ("Saks"), is the owner and operator of the renowned department store chain, Saks Fifth Avenue. Saks has been in business since 1902 and has used the name Saks Fifth Avenue since 1924. Saks owns several federal registrations for the mark Saks Fifth Avenue. Saks currently operates over fifty full service stores, located throughout the United States, and four clearinghouses, located mainly in the eastern United States. Saks has nine stores in California, two of which are in the San Diego area. The San Diego stores are in La Jolla and Mission Valley. Saks plans to open a clearinghouse in southern California.

Saks is well known for the sale of quality men's and women's clothing and accessories, much of which is of a designer label, and almost all of which is new. Saks carries clothing at a variety of price points. The image Saks has created, and that which the name Saks Fifth Avenue perpetuates, is one of class and exclusivity.

Saks sells in excess of one billion dollars annually in merchandise. Its annual expenditure for advertising is more than fifty million dollars. Saks advertises in newspapers such as the New York Times and San Diego Union Tribune, in magazines such as Travel & Leisure and Vanity Fair, and in Conde Nast publications. Saks also promotes its goods by mailings, fashion shows and televised commercials.

Defendant, Beatrice Hill, owns and operates Sacks Thrift Avenue ("Sacks"), a consignment shop located on University Avenue in the North Park section of San Diego. The original owner opened the store in 1984 as Sacks Thrift Avenue. Defendant purchased Sacks in 1986 and did not change the name. Defendant was aware of Saks Fifth Avenue when she bought Sacks Thrift Avenue. She did not seek legal advice as to whether she had the legal right to use the name Sacks Thrift Avenue.

As a consignment shop, Sacks Thrift Avenue sells other people's used clothing. Many of the articles of clothing carry a designer label. After selling a particular item, defendant gives the consignor forty percent of the sales price. Sacks Thrift Avenue appears to be a shop for people who cannot afford new clothing. Defendant advertises by mailings, televised advertisements, newspapers, and fashion shows. She does not advertise in any of the publications that Saks utilizes. Defendant has never cleared a yearly profit in excess of $10,000.

Saks did not learn of Sacks Thrift Avenue until 1992. It brought the present action in April, 1993.

### Conclusions of Law

1. Trademark Infringement and Unfair Competition

 For claims of trademark infringement under federal law and unfair competition under California law, the ultimate test is whether the similarity between two marks is likely to deceive or confuse the public. *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir.1991). Courts determine the likelihood of confusion by balancing the following factors: (1) strength of plaintiff's mark; (2) similarity between the two marks;

(3) proximity of the goods; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchasers; (7) defendant's intent in selecting her mark; and (8) likelihood of expansion of product lines. *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir.1979).

### a. Strength of Mark

Courts afford strong marks, for example those that are either arbitrary or fanciful, the highest level of protection. Descriptive marks receive protection only when there is a secondary meaning. *Id.* at 349. Saks Fifth Avenue is a fanciful mark. Although it generally describes the location of its primary location, the mark Saks Fifth Avenue, in and of itself, does not describe in any way the merchandise that Saks sells. Saks Fifth Avenue is extremely well recognized. It is a strong mark of the highest order.

### b. Similarity

A court determines similarity by analyzing the sight, sound and meaning of the marks. *Plough, Inc. v. Kreis Laboratories,* 314 F.2d 635, 638 (9th Cir.1963). Courts consider the marks as they are encountered in the marketplace and must give more weight to similarities than to differences. *Sleekcraft,* 599 F.2d at 351. In terms of their general appearance, Saks Fifth Avenue and Sacks Thrift Avenue look alike. Defendant's use of an accompanying paper sack does not diminish this general visual similarity. Phonetically, the marks are almost identical. The key difference in meaning involves defendant's substitution of the word Thrift for Fifth. Fifth relates to a location, while Thrift, when used in connection with a store, connotes the sale of secondhand articles. *See Webster's Ninth New Collegiate Dictionary* 1229 (1987). Giving more weight to the similarities, this factor favors the plaintiff.

### c. Proximity of the Goods

Saks Fifth Avenue and Sacks Thrift Avenue sell related goods: clothing and accessories. The danger to plaintiff is that the public might assume there is a relationship between Saks Fifth Avenue and Sacks Thrift Avenue. Examples of proximate goods are those that complement one another, are sold to the same class of consumers, or are similar in use and function. *Sleekcraft,* 599 F.2d at 350. In the present case, the goods sold by defendant and plaintiff are similar in use and function—purchasers obviously use the clothing for the same general purpose. The goods are proximate.

### d. Evidence of Actual Confusion

The law does not require a plaintiff to provide evidence of actual confusion in order to prove likelihood of confusion. Here, plaintiff did not produce substantial evidence of actual confusion. As discussed below, however, there is a risk of post-sale confusion in this case. *Academy,* 944 F.2d at 1456 (citing *Levi Strauss & Co. v. Blue Bell, Inc.,* 632 F.2d 817, 822 (9th Cir.1980)). On balance, this factor is neutral.

### e. Marketing Channels

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft,* 599 F.2d at 353. This circuit has cautioned against taking an overly narrow view of the relevant markets. *Academy,* 944 F.2d at 1455. Both plaintiff and defendant sell clothing and accessories. Plaintiff's primary market consists of middle to high income persons. Defendant sells to persons with lower to middle incomes. Plaintiff advertises in fashion magazines, newspapers, television and mailings. Defendant makes use of local publications, mailings and television. Both conduct fashion shows. As such, the arguably different submarkets involved are exposed to advertising overlap. *Sleekcraft,* 599 F.2d at 353.

Additionally, a danger of post-sale confusion exists. This occurs "when consumers view a product outside the context in which it is originally distributed and confuse it with another, similar product." *Academy,* 944 F.2d at 1455. Defendant sells many items with designer labels. While there is no evidence that she has sold clothing bearing a Saks Fifth Avenue label, there is no guarantee that she has not or will not sell such

clothing, or that she has not or will not sell designer clothing that plaintiff carries.

### f. Type of Goods and Purchaser Care

■ Both parties sell the same general type of goods, but to different submarkets. Plaintiff sells high quality goods at a variety of prices. Defendant sells secondhand goods of varying quality and at lower prices. Generally, the standard for assessing purchasing care is the typical customer using ordinary caution. This standard includes the ignorant and credulous. *Sleekcraft*, 599 F.2d at 353. Persons purchasing clothing generally exercise a relatively high degree of care. *See Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1487 (10th Cir.1987) (customers likely to exercise high degree of care when buying clothing in excess of fifteen dollars). This factor favors the defendant.

### g. Intent

■ "When the alleged infringer knowingly adopts a mark similar to another's, reviewing court's presume that the defendant can accomplish [her] purpose: that is, that the public will be deceived." *Sleekcraft*, 599 F.2d at 354. In the instant action, defendant knew of Saks Fifth Avenue when she purchased Sacks Thrift Avenue. However, an intent to create a parody is not an intent deceive the public. *Toho Co. Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 791 (9th Cir. 1981); *see also Jordache*, 828 F.2d 1482, 1486. Defendant does not appear to have had the intention of deceiving the public into believing they were shopping at Saks Fifth Avenue. Defendant testified that she feels Sacks Thrift Avenue is a clever play on words.

### h. Likelihood of Expansion

■ A potential that either the aggrieved party or the alleged infringer will enter the other's submarket creates a likelihood of direct competition. *Sleekcraft*, 599 F.2d at 354. Plaintiff currently operates four clearinghouses that sell aged goods at lower prices. Plaintiff has plans to open at least one clearinghouse in southern California. This would create an environment of direct competition between plaintiff and defendant. One can foresee a consumer of secondhand designer goods shopping at a clearinghouse that sells aged, but new, designer clothing at reduced prices.

To recapitulate, five factors—strength of mark, similarity, proximity of goods, marketing channels, and likelihood of expansion—favor plaintiff, two favor defendant, and one is neutral. Given these conclusions, there is a likelihood that defendant's use of the mark Sacks Thrift Avenue will confuse the public. This is a violation of federal and state law.

### 2. Dilution

The California anti-dilution statue states as follows:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of the goods or services.

Cal.Bus. & Prof.Code § 14330.

■ The purpose of this statute is to protect "against the whittling away of [a] plaintiff's mark." To prevail a plaintiff need not prove a likelihood of confusion, but merely that "there is at least some subliminal connection in a buyer's mind between the two parties' uses of their marks." *Fruit of the Loom Inc. v. Girouard*, 994 F.2d 1359, 1363 (9th Cir.1993). As a likelihood of confusion exists in this case, there is certainly the necessary subliminal connection. Furthermore, there is a real threat that defendant's mark will cause damage to the inherent value of plaintiff's distinctive, famous and strong mark. *Toho*, 645 F.2d at 793. Cases in this circuit that have limited the use of this doctrine because of concerns that it will destroy all competition involved marks that were either not strong or not similar. *See HMH Publishing Co. Inc. v. Lambert*, 482 F.2d 595, 597–99 (9th Cir.1973) (Playboy and Playgirl not confusingly similar); *Carter–Wallace, Inc. v. Proctor & Gamble Co.*, 434 F.2d 794, 803 (9th Cir.1970) (use of "Sure" in slogan "ARRID To Be Sure" not distinctive); *Coffee*

*Dan's, Inc. v. Coffee Don's Charcoal Broiler,* 305 F.Supp. 1210, 1213–14 (N.D.Cal.1969) (plaintiff's name and mark neither distinctive nor fanciful).

In this case, defendant's use of Sack's Thrift Avenue, which is similar in sight and sound to Saks Fifth Avenue, dilutes the distinctive value of plaintiff's famous and strong mark. *Academy,* 944 F.2d at 1457.

### 3. Defenses

Defendant has raised laches and fair use as defenses. Laches occurs in the context of trademark infringement after a trademark owner inexcusably delays in attempting to enjoin the infringer. A plaintiff must be on notice of the infringing mark before there can be laches. *E–Systems, Inc. v. Monitek, Inc.,* 720 F.2d 604, 607 (9th Cir. 1983) (plaintiff had ample opportunity to discover defendant's activities and had constructive notice of registered mark). In this case, plaintiff did not learn of defendant's business until 1992, at which time it promptly began an effort to terminate defendant's use of Sacks Thrift Avenue.

Fair use cannot be a defense in this action unless "Sacks" is defendant's name, or "Thrift Avenue" is the geographic origin of the goods or services. 15 U.S.C. § 1115(b)(4). Neither is true.

### 4. Relief

Injunctive relief is the appropriate remedy in cases of trademark infringement, dilution and unfair competition. *Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175 (9th Cir.1988); 15 U.S.C. § 1116(a); Cal.Bus. & Prof.Code §§ 14335, 17203, and 17535.

Under federal trademark law, a court may award attorneys' fees only in exceptional circumstances, such as where the defendant "engaged in bad faith or inequitable conduct...." *Grey v. Campbell Soup Co.,* 650 F.Supp. 1166, 1176 (C.D.Cal.1986). Exceptional circumstances do not exist in this case. Plaintiff will not receive attorneys' fees.

*Conclusion*

Having found that defendant's use of Sacks Thrift Avenue constitutes trademark infringement and unfair competition under federal law, and dilution and unfair competition under California law, defendant, as of January 28, 1994, will be PERMANENTLY ENJOINED and RESTRAINED from using the name and mark Sacks Thrift Avenue.