**RINGLING BROS.–BARNUM & BAILEY, COMBINED SHOWS, INC., Plaintiff,**

v.

**UTAH DIVISION OF TRAVEL DEVELOPMENT, Defendant.**

**Civil Action No. 96–788–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Sept. 10, 1996.

Stephen M. Colangelo, McGuire, Woods, Battle & Boothe, Alexandria, Virginia, for Plaintiff.

Jerrold S. Jensen, Office of the Utah Attorney General, Salt Lake City, UT, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This case presents a novel, but straightforward question concerning the scope of the new anti-dilution provision of the federal Trademark Act, 15 U.S.C. § 1125(c)(1). In essence, this new provision protects famous marks from losing their capacity for identifying goods or services as a result of the use by another of a mark regardless of the presence or absence of potential customer confusion or competition between the famous mark owner and the user of the allegedly infringing mark. Specifically, the question here presented is whether the anti-dilution provision operates only where the allegedly diluting mark is identical to the famous mark, or whether it is also triggered where the diluting mark is only similar to the famous mark. Only if the latter is true can the claim at bar survive threshold attack, as the allegedly diluting mark here is merely imitative, not identical to the famous mark.

### I.

Plaintiff, of course, operates a well-known circus which has advertised and promoted its product for more than a century using the mark THE GREATEST SHOW ON EARTH. This trademark was registered in 1961, receiving U.S. Trademark Registration No. 724,946, and was renewed in 1981.[1] Defendant uses the slogan THE GREATEST SNOW ON EARTH on license plates, advertisements, and other promotions in an effort to attract visitors to Utah's recreational and scenic resorts. In 1988, defendant applied to the Patent and Trademark Office for federal registration of its mark, THE GREATEST SNOW ON EARTH. Plaintiff opposed this application, but its opposition was dismissed by a unanimous decision of the Trademark Trial and Appeal Board. Thereafter, on June 6, 1996, plaintiff filed this action.

Plaintiff seeks relief against defendant's use of THE GREATEST SNOW ON EARTH under the Trademark Act ("the Act"). The Act was amended on January 16, 1996 to include a federal cause of action for dilution.[2] Prior to this amendment, the owner of a famous mark had a federal cause of action for infringement. *See* 15 U.S.C. § 1114. Yet, to recover for infringement a famous mark owner is required to demonstrate that the use of an imitative mark "is likely to cause confusion, or to cause mistake, or to deceive." *Id.* Infringement, then, essentially requires that the protected and imitative marks be used in connection with competing goods and services or that there exists some potential for customer confusion. Following the lead of numerous states[3] and

---

1. Plaintiff also owns two other trademark registrations which include the mark THE GREATEST SHOW ON EARTH on a globe graphic, U.S. Trademark Registration Nos. 724,947 and 1,366,-779.

2. In § 1127, the Act defines dilution as:
   lessening the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of—
   (1) competition between the owner of the famous mark and other parties, or
   (2) likelihood of confusion, mistake, or deception.

3. The House report on H.R. 1295, the bill which became the amendment to the Act, reported that "approximately 25 states have laws that prohibit trademark dilution." H.R.Rep. No. 374, 104th Cong., 1st Sess. 4 (1995), U.S.Code Cong. & Admin.News at 1029, 1031. ("House Report"). In statements before the House Subcommittee on Courts and Intellectual Property, the Assistant Commissioner for Trademarks reported that twenty seven states had statutes providing remedies for dilution of famous marks. *Trademarks Legislation: Hearings on H.R. 1295 and H.R. 1270 Before the Subcommittee on Courts and Intellectual Property of the House Committee on the Judiciary,* 1995 WL 435751, *3 (1995) (statement of Philip G. Hampton, Assistant Commissioner for Trademarks) ("Hampton Statement").

foreign countries,[4] Congress enacted the anti-dilution provision in recognition that infringement is not the only way a famous mark can be harmed, but rather that another's use of a mark might blur the distinctiveness of a famous mark or otherwise harm the owner of such a mark even absent competition and the likelihood of confusion, mistake or deception.

Relying on the anti-dilution provision of the Act, plaintiff claims that defendant's use of THE GREATEST SNOW ON EARTH results in the dilution of its registered mark THE GREATEST SHOW ON EARTH. Defendant seeks dismissal pursuant to Rule 12(b)(6), Fed.R.Civ.P., arguing that the anti-dilution provision only bars another from using a mark identical to the famous mark, not merely a similar mark. Therefore, because defendant's mark is only imitative, not identical (SNOW is substituted for SHOW), the anti-dilution provision cannot be invoked and the action should be dismissed. Plaintiff, of course, argues for a broader scope for the anti-dilution provision, contending that the provision's plain meaning extends its reach to similar or imitative marks. The task at hand is to determine which of these is the correct interpretation of the statute.

## II.

■ It is axiomatic that the task of statutory interpretation must begin with the language of the statute itself. And there the task ends if the language has a plain and unambiguous meaning, for it is an essential and necessary assumption that the goal of statutory interpretation is to give effect to the legislators' intent, which they must make manifest in the statutory language.[5] To be sure, not all statutory language is plain and unambiguous; many statutes include ambiguities or lacunas, which must be judicially resolved or filled. This aspect of the interpretive task is accomplished by reference to the statute's purpose, which in turn may be discerned from the statute's terms, structure, and in appropriate circumstances, the legislative history.[6]

At all events, the proper starting point is the pertinent statutory language itself, which here is as follows:

The owner of **a famous mark** shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of **a mark** or tradename, if such use begins after **the mark** has become famous and causes dilution of the distinctive quality of **the mark,** and to obtain such other relief as is provided in this subsection.

15 U.S.C. § 1125(c)(1) (emphasis added).

■ The highlighted text demarcates the heart of the interpretive dispute. Defendant asserts that the phrase "another person's use in commerce of a mark or trade name" refers only to the famous mark protected by the amendment. By defendant's lights, therefore, only the use of a mark identical to the famous mark can cause prohibited dilution. Yet, this reading is contrary to the statute's plain and unambiguous language. The statute's two references to "the mark" plainly mean the "famous mark". By contrast, the statute's use of the indefinite article "a" when referring to the offending mark plainly means that the offending mark need not be identical to the famous mark. Had Congress intended to limit the reach of the provision to

4. Canada, Japan, Spain, Greece, Venezuela, and Great Britain have anti-dilution provisions in their trademark law. *Trademarks Legislation: Hearings on H.R. 1295 and H.R. 1270 Before the Subcommittee on Courts and Intellectual Property of the House Committee on the Judiciary,* 1995 WL 435750, *10 (1995) (statement of Mary Ann Alford, Executive Vice President of the International Trademark Association) ("Alford Statement"). The European Community also recognizes an action for dilution, *id.,* as do international agreements to which the United States is a party, such as GATT and the Paris Convention. House Report at 4.

5. *See United States v. American Trucking Assns., Inc.,* 310 U.S. 534, 543, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940) ("There is, of course, no more persuasive evidence of the purpose of a statute then the words by which the legislature undertook to give expression to its wishes.").

6. *See, e.g., Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571–74, 102 S.Ct. 3245, 3250–52, 73 L.Ed.2d 973 (1982) (construing a statute's purpose through consideration of, in turn, the statute's terms, structure and legislative history).

offending marks that were identical to the famous mark, it would have used the definite article "the" in referring to the diluting mark, and perhaps the words "same" or "identical", as well. Instead, Congress chose to use plain and unambiguous language to make clear that a famous mark may be diluted by the use of "a mark", not "the [famous] mark".

Because the statute's plain and unambiguous language answers the question presented, the interpretive task is at an end. Even so, both parties go beyond the statutory language to claim that the legislative history vindicates their view of the statute. Thus, defendant relies on the House Report, which states that the anti-dilution provision was added to protect "against another's commercial use of a famous mark." House Report at 3. The report also includes a list of examples: "DUPONT shoes, BUICK aspirin, and KODAK pianos." *Id.* While these statements are consistent with defendant's position, neither precludes the reading that the plain language compels. This list of examples does not purport to be exhaustive and the statement is inconclusive.[7] Nowhere

does the report clearly contradict the statute's plain meaning by saying explicitly that an offending diluting mark must be identical to the famous mark, not just imitative. In these circumstances, as the Supreme Court has stated, "[i]n the absence of 'clearly expressed legislative intention to the contrary,' the language of the statute itself 'must ordinarily be regarded as conclusive.'" *United States v. James,* 478 U.S. 597, 606, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986) (*quoting Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

On the subject of legislative history, it is worth noting that some points persuasively, if not conclusively, to the interpretation given here to the statute. Specifically, interpreting the statute to protect against the use of similar marks is supported by (1) the original wording of the statute;[8] (2) Congress' goal of establishing uniformity among the states in protection of famous marks from dilution;[9] and (3) Congress' goal of conforming a federal dilution statute to dilution provisions enacted internationally.[10] In sum, this legisla-

---

7. For example, one can "use" a famous mark merely by imitating it.

8. The anti-dilution provision originally proposed read:

> The owner of a famous mark shall be entitled ... to an injunction against another person's commercial use in commerce of a mark or tradename, if such use begins after the (registrant's) mark has become famous and causes dilution of the distinctive quality of the (registrant's) mark, and to obtain such other relief as is provided in this subsection.

Appendix to Hampton Statement, 1995 WL 435751, at *22. This version of the provision confirms that the use of the phrase "the mark", with the definite article, refers to the famous mark. Elimination of the term "registrant's" does not affect this point, as it was done merely for the unrelated purpose of ensuring that "famous marks [would] be protected regardless of whether the marks are registered in the country where protection is sought." House Report at 4.

9. *Congress* concluded that a uniform federal solution was necessary because marks are used nationwide and many, but not all, states provide anti-dilution protection. *See* House Report at 3–4 ("A federal dilution statute is necessary because famous marks ordinarily are used on a nationwide basis and dilution protection is currently only available on a patch-quilt system of protection.") Among the states with anti-dilu-

tion statutes, three explicitly extend protection to the use of imitative or similar marks. *See* Fla. Stat.Ann. § 495.151; Ga.St. 10–1–451(b); Ill. Stat. ch. 765 § 1035/15; *see also Polaroid Corp. v. Polaraid, Inc.,* 319 F.2d 830, 836 (7th Cir. 1963) (POLAROID diluted by POLARAID under predecessor to Illinois anti-dilution statute prohibiting dilution by use of "same or similar mark"). As for the remaining states with statutes that do not explicitly address this point, the courts addressing this issue have consistently construed these statutes to protect against dilution from similar or imitative marks. *See, e.g., Saks & Co. v. Hill,* 843 F.Supp. 620 (S.D.Cal. 1993), *appeal dismissed,* 65 F.3d 175 (9th Cir. 1995). (SACK'S THRIFT AVENUE dilutes SAKS FIFTH AVENUE under California dilution provision, Cal.Bus. & Prof.Code § 14330); *Toys 'R Us, Inc. v. Canarsie Kiddie Shop, Inc.,* 559 F.Supp. 1189 (E.D.N.Y.1983) (KIDS 'R US dilutes TOYS 'R US under New York dilution provision, N.Y.Gen.Bus. § 368–d).

10. *See* House Report at 4 ("Passage of a federal dilution statute would also assist the executive branch in its bilateral and multilateral negotiations with other countries to secure greater protection for the famous marks owned by U.S. companies.") Many international dilution statutes expressly apply to the use of similar marks. For instance, the dilution provision of the Community Trademark Regulation of the European

tive history supports the result reached here because it reflects that the federal anti-dilution provision was inspired by state and foreign statutes that protect famous marks from dilution from identical or similar marks.

Finally, it is also worth noting that while this issue does not appear to have been squarely presented and decided in any published decision, two courts seem implicitly to have assumed, without deciding, that the anti-dilution provision reaches the use of imitative marks, as well as the use of marks identical to the famous mark.[11] That the issue was not disputed in those cases is not surprising, given the statute's clarity and lack of ambiguity on this point. And this interpretation is undeniably correct in view of the fact that the proliferation of similar, though not identical, marks would clearly "lessen the capacity of a famous mark to identify and distinguish goods or services," resulting in dilution as defined by 15 U.S.C. § 1127.[12]

For the reasons stated, the motion to dismiss must be denied.[13] An appropriate order has issued.

Community prohibits "the use of any sign which is identical with or similar to the Community Trademark." Alford Statement 1995 WL 435750, at *10.

11. *See Wawa, Inc. v. Haaf,* 1996 WL 460083 (E.D.Pa.1996) (WAWA food markets granted permanent injunction against HAHA 24HR MARKET under anti-dilution provision); *Ringling Bros.–Barnum & Bailey Combined Shows, Inc. v. B.E. Windows,* 937 F.Supp. 204 (S.D.N.Y.1996) (denying motion for preliminary injunction in action brought by owner of the mark THE GREATEST SHOW ON EARTH against bar using mark THE GREATEST BAR ON EARTH).

12. The dilution of famous marks through "blurring" as a result of the use of similar or imitative marks is acknowledged in the legislative history, which illustrates this "blurring" with such examples as the state law held to prohibit the use of the mark POLARAID on heating and refrigeration systems because it diluted the POLAROID trademark for photographic equipment. Hampton Statement at 3 (*citing Polaroid Corp. v. Polaraid, Inc.,* 319 F.2d 830 (7th Cir.1963)). But, as another example reflects, proving dilution or "blurring" can be quite difficult. *See Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.,* 875 F.2d 1026 (2nd Cir.1989) (use of LEXUS for automobiles found not to dilute use of LEXIS for legal research systems).

13. At the hearing, defendant urged, in the alternative, that summary judgment was appropriate on the basis of the current record. This is unpersuasive given the sparseness of the current record and the fact intensive nature of the dilution issue. *See* 15 U.S.C. § 1125(c)(1)(A)–(H).