**RESORTS OF PINEHURST, INC.,**
**a North Carolina corporation,**
**Plaintiff,**

v.

**PINEHURST NATIONAL DEVELOPMENT CORPORATION, a North Carolina corporation, Pinehurst National Corporation, a North Carolina corporation; Pinehurst National Golf Club, Inc., a North Carolina corporation; and U.S. Golf Pinehurst Plantation Ltd., a Florida limited partnership, Defendants.**

**Nos. 3:94CV00265, 3:96CV00311.**

United States District Court,
M.D. North Carolina,
Rockingham Division.

June 24, 1997.

Smith, Helms, Mullis and Moore, Greensboro, NC, for Plaintiff.

James D. Monteith, Waggoner, Hamrick, Hasty, Monteith and Kratt, P.L.L.C., Charlotte, NC, for Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff's Motion for a Preliminary Injunction [Document # 3].[1]

### I. FACTUAL BACKGROUND.

The facts as are relevant for the purposes of this motion reveal the following. Plaintiff Resorts of Pinehurst, Inc. ("Resorts") owns a hotel and golf course resort in the Village of Pinehurst, an area in Moore County, North Carolina. The Resorts golf courses have been the site of many prominent national tournaments, and Resorts is currently scheduled to host the 1999 U.S. Open championship. Resorts registered federal trademarks for its resort and golf operations in 1990, and holds a number of unregistered service marks for these operations as well.

The late 1980's saw the development of two new golf course operations in the Moore County area. In 1985, plans were announced for a new golf community in Moore County called "Pinehurst National Golf Club" ("National"). The National course was designed by Jack Nicklaus and opened for play in 1989. In 1988, plans for the "Pinehurst Plantation Golf Club" ("Plantation") were announced. Arnold Palmer designed the Plantation course, which opened for play in 1993.

It was not until 1994 that Resorts filed suit against the ownership interests of National and Plantation (collectively, "Defendants") alleging trademark and service mark infringement, false designation of origin, and false advertising, all under the Lanham Act, and state law claims of unfair trade practices and unfair competition. Resorts subsequently brought a claim of dilution seeking injunctive relief and damages under the newly enacted Federal Trademark Dilution Act ("Dilution Act"). The Dilution Act, which took effect in January 1996, incorporated into the Lanham Act a federal claim for dilution of trademarks and service marks. Pursuant to this Dilution Act claim, Resorts now moves for a preliminary injunction.

### II. DISCUSSION.

In response to Resorts' Motion for Preliminary Injunction, Defendants contend that the provisions of the Dilution Act cannot be applied in this case because the statute would operate retroactively, thereby punishing De-

---

1. This case was originally being managed as two concurrent cases: Plaintiff's claims for trademark and service mark infringement under the Lanham Act (the "265" case) in one case, and Plaintiff's claim for trademark and service mark dilution (the "311" case) in another. These cases were consolidated by court order on November 13, 1996. The Document Numbers noted in this Memorandum Opinion and the accompanying Order and Judgment refer to the numbers as are pertinent to the "311" case.

fendants for conduct that was legal prior to the effective date of the Dilution Act. The Dilution Act provides:

(c) Remedies for dilution of famous marks

(1) The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection. In determining whether a mark is distinctive and famous, a court may consider factors such as, but not limited to—

(A) the degree of inherent or acquired distinctiveness of the mark;

(B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;

(C) the duration and extent of advertising and publicity of the mark;

(D) the geographical extent of the trading area in which the mark is used;

(E) the channels of trade for the goods or services with which the mark is used;

(F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;

(G) the nature and extent of use of the same or similar marks by third parties; and

(H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

(2) In an action brought under this subsection, the owner of the famous mark shall be entitled only to injunctive relief unless the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark. If such willful intent is proven, the owner of the famous mark shall also be entitled to the remedies set forth in sections 1117(a) and 1118 of this title, subject to the discretion of the court and the principles of equity.

(3) The ownership by a person of a valid registration under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register shall be a complete bar to an action against that person, with respect to that mark, that is brought by another person under the common law or a statute of a State and that seeks to prevent dilution of the distinctiveness of a mark, label, or form of advertisement.

(4) The following shall not be actionable under this section:

(A) Fair use of a famous mark by another person in comparative commercial advertising or promotion to identify the competing goods or services of the owner of the famous mark.

(B) Noncommercial use of a mark.

(C) All forms of news reporting and news commentary.

15 U.S.C. § 1125(c).

The guiding principles in determining whether a statute has retroactive effect are set out in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In *Landgraf,* the United States Supreme Court dealt with the retroactivity issue in its analysis of new provisions of Title VII enacted in the Civil Rights Act of 1991. The Supreme Court first noted the "apparent tension" that results when comparing the general rule that " 'a court is to apply the law in effect at the time it renders its decision,' " *id.* at 264, 114 S.Ct. at 1496, 128 L.Ed.2d at 251 (quoting *Bradley v. Richmond School Bd.,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476, 488 (1974)), with the statement that " '[r]etroactivity is not favored in the law,' and its interpretive corollary that 'congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result[,]' " *id.* (quoting *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468,

471, 102 L.Ed.2d 493, 500 (1988) (citation omitted)). Nonetheless, the Supreme Court concluded that this "apparent tension" did not alter the "the well-settled presumption against application of the class of new statutes that would have genuinely 'retroactive' effect." *Id.* at 276, 114 S.Ct. at 1502–03, 128 L.Ed.2d at 260. The Supreme Court then offered the following general principle in summary:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at 280, 114 S.Ct. at 1505, 128 L.Ed.2d at 261–62.

The United States District Court for the Eastern District of Virginia applied the *Landgraf* reasoning in its examination of the Dilution Act in *Circuit City Stores, Inc., v. OfficeMax, Inc.,* 949 F.Supp. 409 (E.D.Va. 1996). The *Circuit City Stores* court encountered a situation in that case similar to the one before this Court. In *Circuit City Stores,* OfficeMax, a national chain of office products "superstores," brought a claim under the Dilution Act against CarMax, a chain of stores involved in the sales of used automobiles. In its application of the two-part *Landgraf* test to the Dilution Act, the court initially noted that the statute's express language and legislative history offered no in-

sight into the Congressional intent with respect to retroactivity. The court therefore concluded that, with respect to the first prong of the *Landgraf* test, "the Dilution Act is presumptively inapplicable to [the defendant's] pre-enactment conduct because there is no clear Congressional intent to make its proscriptions applicable retroactively." *Circuit City Stores,* 949 F.Supp. at 414.

With respect to the retroactive effect of the Dilution Act, the *Circuit City Stores* court reviewed the considerations that the Supreme Court found significant in its analysis in *Landgraf*:

> In *Landgraf,* the Supreme Court recognized that "[a]ny test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity." *Id.* at 270, 114 S.Ct. at 1499[, 128 L.Ed.2d at 255]. This action presents one of those "hard cases" in which the application of the *Landgraf* test "leave[s] room for disagreement." However, as the Supreme Court recognized in *Landgraf,* "retroactivity is a matter on which judges tend to have sound instinct[s], and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance." *Id.* (internal citations and quotations omitted).
>
> .... In *Landgraf,* the Court explained that:
>
> > Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.... *In a free and dynamic society, creativity in both commercial and artistic endeavors is fostered by a rule of law that gives people confidence about the legal consequences of their actions.*
>
> *Id.* at 265–66, 114 S.Ct. at 1497[, 128 L.Ed.2d at 252] (emphasis added). The

Court then underscored the justifications for the presumption against retroactivity:

> [T]he ban on retrospective legislation embraced all statutes, which, though operating only from their passage, affect vested rights and past transactions.... [E]very statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective.

*Id.* at 268–69, 114 S.Ct. at 1499[, 128 L.Ed.2d at 254] (internal quotations and citations omitted). Significantly, the Court recognized that "[t]he largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." *Id.* at 271, 114 S.Ct. at 1500[, 128 L.Ed.2d at 256].

*Circuit City Stores,* 949 F.Supp. at 414–15. The *Circuit City Stores* court then examined the viability of the Dilution Act claim before it based upon its understanding of the Supreme Court's reasoning in *Landgraf:*

> [T]he Dilution Act creates a new cause of action—a federal anti-dilution claim—which did not exist from September 1993, when CarMax first chose its service marks and opened its first store, until January 16, 1996, when the Dilution Act took effect. During the two-and-a-half year period before this new claim was created, CarMax spent millions of dollars advertising its marks and expanding its business operations. The actions of CarMax during that period were entirely proper insofar as federal law was concerned; and its actions were taken pursuant to, and in furtherance of, settled commercial expectations and vested intellectual property rights.

Before the adoption of the Dilution Act, there was no federal claim for use of a trademark unless it presented a "likelihood of confusion" with a senior mark. 15 U.S.C. §§ 1114, 1125. Under the Dilution Act, however, once a mark is determined to be "famous," there is no requirement that another's use of a similar mark be confusing or deceptive, or that it be used on a competing *good.* Thus, the Dilution Act significantly expanded the reach of the Lanham Act by creating new obligations, imposing new duties, *and* attaching new disabilities with respect to marks already adopted. Whether forced to pay money damages or to suffer an injunction barring future use of the CarMax marks, the effect on CarMax is effectively the same-CarMax would lose its very identity, achieved as the result of conduct and commercial investment, which was perfectly lawful at the time. However, the enforcement of the Dilution Act here would violate the "considerations of fairness" which are the fundamental underpinning of *Landgraf,* 511 U.S. at 266, 114 S.Ct. at 1505[, 128 L.Ed.2d at 252].

. . . .

OfficeMax argues, however, that enforcing the injunctive provisions of the Dilution Act would not have a retroactive effect because CarMax's conduct is not completed, past conduct, but is, instead on-going and continuous, in light of CarMax's recent announcement in its plans to expand into the national market.

OfficeMax interprets *Landgraf* as standing for the proposition that forward-looking, injunctive relief is not subject to the *Landgraf* non-retroactivity rule. In support of its interpretation, OfficeMax relies on the following passage from *Landgraf:*

> Even absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations. When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive.

*Id.* at 273, 114 S.Ct. at 1501[, 128 L.Ed.2d at 257]. This language, says OfficeMax, means that when a newly enacted statute provides for injunctive relief in the future, the application of the statute is not retroactive, and the statute *should be enforced* with respect to pre-enactment conduct which is likely to *continue.*

That argument goes too far because the cited passage from *Landgraf* does not stand for the proposition that the enforcement of a statute providing for injunctive relief can *never* be impermissibly "retroactive." Rather, the dicta on which OfficeMax relies speaks solely to cases in which the relevant conduct was *already illegal* before the effective date of the intervening statute. Indeed, each case cited by the Supreme Court in support of the passage upon which OfficeMax relies involved conduct which was illegal *before the enactment* of the new statute. *See Duplex Printing Press Co. v. Deering,* 254 U.S. 443, 461, 41 S.Ct. 172, 175, 65 L.Ed. 349[, 354] (1921) (enforcing the Clayton Act against defendants where "defendants had agreed to do and were endeavoring to accomplish the very thing pronounced unlawful by this court in *Loewe v. Lawlor,* 208 U.S. 274, [28 S.Ct. 301, 52 L.Ed. 488 (1908)] ..."); *American Steel Foundries v. Tri–City Central Trades Council,* 257 U.S. 184, 203, 42 S.Ct. 72, 76, 66 L.Ed. 189[, 197] (1921) (applying section 20 of the Clayton Act to conduct which was previously illegal where the statute "introduce[d] no new principle into the equity jurisprudence of th[e] courts").

In such circumstances, the application of purely prospective injunctive relief raises no retroactivity concerns because where the past conduct is illegal, the enforcement of the intervening statute merely provides a new remedy with respect to that conduct, and does not act to significantly "sweep away settled expectations." *Landgraf,* 511 U.S. at 266, 114 S.Ct. at 1497[, 128 L.Ed.2d at 253]. Here, by contrast, CarMax's actions were not illegal under federal law before the effective date of the Dilution Act. Therefore, any injunction against CarMax would arise as a "new cause of action" for conduct which federal law "afforded no relief["] at the time of the conduct.[ ] *Landgraf,* 511 U.S. at 281–82, 114 S.Ct. at 1506[, 128 L.Ed.2d at 264].

. . . .

As previously discussed, when CarMax chose its marks in September 1993, there was no federal law prohibiting use of a trademark that, although not likely to cause consumer confusion, might "dilute" a senior mark used in an entirely different market for an entirely different class of products. Relying on the law as it existed in 1993, CarMax selected and, for over two years, advertised and promoted, a valid legal mark. Enforcing the Dilution Act under these circumstances would be tantamount to "reaching back" to deny [the defendant] the substantial benefits its past, legal conduct has reaped. It would be manifestly inequitable to apply a dilution theory to require CarMax to abandon its investment and the accompanying "good will" associated with its name, and to start all over at great expense, in light of the new law which departs from the traditional "likelihood of confusion" standard. The principles of equity and *Landgraf* teach that CarMax was entitled to believe, and to act on the belief, that it could ... adopt and register a service mark that incorporated the suffi[x] "Max" and commence doing business under that mark, all without facing a federal dilution claim from a non-competing office supplies seller. If OfficeMax has a federal claim, it must be measured under the law of infringement and the confusion standard, not under the dilution concept created by the Dilution Act.

*Circuit City Stores,* 949 F.Supp. at 415–19 (footnote omitted; emphasis in original). The United States District Court for the Eastern District of Missouri followed this approach in *Viacom, Inc. v. Ingram Enterprises, Inc.,* 965 F.Supp. 1278, (E.D.Mo. 1997), in which that court concluded that "the analysis used by the *Circuit City [Stores]* court was correct in all respects." *Id.,* 965 F.Supp. at 1281.

This Court is persuaded that the *Circuit City Stores* court's analysis of the *Landgraf* principles in the context of the Dilution Act is an appropriate standard to use in applying the *Landgraf* test to the facts at issue here. With respect to the first prong of the *Landgraf* test, this Court similarly concludes that there is no evidence in the text or legislative history of the Dilution Act that Congress intended the Act to be applied retroactively, and that the Act is therefore "presumptively inapplicable," *Circuit City Stores,* 949 F.Supp. at 414, to Defendants' conduct prior to the date of enactment.

The second prong of the *Landgraf* test involves a determination whether the Dilution Act "attaches new legal consequences to

events completed before its enactment." *Landgraf,* 511 U.S. at 268–69, 114 S.Ct. at 1498–99, 128 L.Ed.2d at 255; *Circuit City Stores,* 949 F.Supp. at 414. The first consideration in this regard is the "completed" nature of the conduct at issue. In a similar argument to that made by OfficeMax in *Circuit City Stores,* Resorts contends that Defendants' conduct is not completed, but remains ongoing even now since Defendants continue to use the term "Pinehurst" in their trade names. Resorts therefore argues that it is seeking only to preclude the prospective dilution of its mark by Defendants' continuing use of the term "Pinehurst." In its analysis of OfficeMax's similar argument, the court in *Circuit City Stores* focused on the conduct involved in the selection of the trade name itself and the associated acts involved in introducing that name into the public domain. *See Circuit City Stores,* 949 F.Supp. at 415 ("when CarMax chose its service marks and opened its first store"); *id.* ("CarMax spent millions of dollars advertising its marks and expanding its business operations" before the dilution claim was created); *id.* at 418 ("when CarMax commenced operation"); *id.* ("CarMax was justified in commencing business over two years before the enactment of the Dilution Act"). The record before the Court in this matter indicates similar pre-enactment conduct by both National and Plantation to the extent that their Lanham Act "use" of "Pinehurst" involved the selection of trade names including the term "Pinehurst" and the publicizing of these trade names in 1985 and 1988 respectively. Since Defendants' conduct in this regard occurred well before the enactment of the Dilution Act, this Court finds that, under the reasoning set forth in *Circuit City Stores,* Defendants had "completed" the conduct relevant to this inquiry prior to the enactment of the Dilution Act.

Resorts contends, however, that the court in *Circuit City Stores* ignored well-established Fourth Circuit law providing that conduct "start[ing] before *and continu[ing] af-*

*ter* the passage of the relevant statute" is not affected by the retroactivity doctrine. Resorts therefore maintains that, in this context, it may seek damages and an injunction for the conduct of Defendants occurring after the passage of the Dilution Act without triggering the concerns of the retroactivity doctrine. In this vein, Resorts cites *Russell v. Microdyne Corp.,* 65 F.3d 1229 (4th Cir. 1995), *Brinkley–Obu v. Hughes Training, Inc.,* 36 F.3d 336 (4th Cir.1994), and *Munday v. Waste Mgmt., Inc.,* 858 F.Supp. 1364 (D.Md.1994), for the proposition that "the retroactivity doctrine simply does not bar suit seeking redress for post-enactment conduct even when that conduct began before the passage of the relevant statute."

While the *Circuit City Stores* court did not directly address the cases cited by Resorts in its resolution of the retroactivity issue, the court's analysis in *Circuit City Stores* was not inconsistent with the general rule as set forth in *Russell, Brinkley–Obu,* and *Munday.* Each of these three cases dealt with the applicability of the retroactivity doctrine to certain provisions of the Civil Rights Act of 1991. In all three of these cases, the respective courts, basing their decisions on *Landgraf,* held that the plaintiff could recover damages for post-enactment conduct where the conduct had occurred both before and continued after the statute's enactment. *Russell,* 65 F.3d at 1241; *Brinkley–Obu,* 36 F.3d at 355; *Munday,* 858 F.Supp. at 1376–77 n. 5.

Based upon the Supreme Court's use of language in *Landgraf* recognizing that the application of an intervening statute is proper where the statute "affects the propriety of prospective relief," *Landgraf,* 511 U.S. at 273, 114 S.Ct. at 1501, 128 L.Ed.2d at 257, Resorts contends that the same result should occur here. However, the *Circuit City Stores* court noted that this passage in *Landgraf* referred "solely to cases in which the relevant conduct was *already illegal* before the effective date of the intervening statute." *Circuit City Stores,* 949 F.Supp. at 417. Two of the cases that the Supreme Court cited for support of its statement in *Landgraf,*[2] *Amer-*

---

2. In the third case, *Hall v. Beals,* 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969), the intervening statute rendered the issues in the case moot. *See*

*id.* at 48–51, 90 S.Ct. at *201–03,* 24 L.Ed.2d at 217–19.

*ican Steel Foundries v. Tri–City Central Trades Council*, 257 U.S. 184, 42 S.Ct. 72, 66 L.Ed. 189 (1921), and *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349 (1921), also dealt with situations in which the intervening statute merely furnished a new remedy for conduct already prohibited under the statutory regime. *See American Steel Foundries*, 257 U.S. at 201–03, 42 S.Ct. at 75–76, 66 L.Ed. at 196–97 (noting that application of new injunctive remedy under § 20 of Clayton Act was proper where the defendants were engaged in conspiracy to injure employer's business though organized picketing prohibited by Sherman Act); *Deering*, 254 U.S. at 460–61, 464–78, 41 S.Ct. at 174, 175–81, 65 L.Ed. at 354–61 (noting that application of new injunctive remedy under § 20 of Clayton Act was proper where the defendants were previously engaged in a boycott prohibited by state law).

In examining the Supreme Court's holdings in *Landgraf, American Steel Foundries,* and *Deering* in the context of the facts presented in its case, the *Circuit City Stores* court also recognized that "the application of purely prospective injunctive relief raises no retroactivity concerns because where the past conduct is illegal, the enforcement of the intervening statute merely provides a new remedy with respect to that conduct[.]" *Circuit City Stores*, 949 F.Supp. at 417. Therefore, the *Circuit City Stores* decision in this regard is not inconsistent with the holdings in *Russell, Brinkley–Obu,* and *Munday,* all of which acknowledged the applicability of new remedies under the Civil Rights Act of 1991 where the predicate conduct at issue was already proscribed by Title VII's prohibitions on discrimination at the time the conduct occurred. *See Russell*, 65 F.3d at 1241 (noting that "a jury may properly award damages in connection with any *unlawful* conduct that occurred after … the Act's effective date") (citing *Brinkley–Obu,* 36 F.3d at 354–55) (emphasis added); *Brinkley–Obu,* 36 F.3d at 338–39, 353–55 (generally

hold ing the same); *Munday*, 858 F.Supp. at 1378 (generally holding the same).[3]

Implicit in Resorts' argument that it only seeks relief for post-enactment conduct is the notion that Defendants' conduct prior to the enactment of the Dilution Act *was* illegal: Resorts asserted this very point in its initial Complaint in 1994 for its claims that the same conduct at issue here in its Dilution Act claim (i.e., Defendants' use of the term "Pinehurst" in their trade names) also violates the Lanham Act's proscriptions on trademark and service mark infringement. While the court in *Circuit City Stores* did indicate that retroactive application of a statute is prohibited only where the relevant actions of the defendant are *"not illegal* under federal law," *Circuit City Stores*, 949 F.Supp. at 417 (emphasis added), a clear reading of this opinion reveals the court's emphasis in this regard on illegality *in a dilution context.* While *Landgraf* and the other previously discussed cases dealing with retroactivity involved in pertinent part the 1991 Civil Rights Act's integration of a new remedy (for example, compensatory and punitive damages) into Title VII's already established statutory regime prohibiting a category of conduct, the Dilution Act did more than add another remedy into the Lanham Act. Not only did the Dilution Act broaden the scope of the Lanham Act in its treatment of trade and service marks, it also made the same conduct in many instances already proscribed by the Lanham Act illegal *in a different way.* The *Circuit City Stores* court recognized this circumstance in its statement that "the Dilution Act significantly expanded the reach of the Lanham Act by creating new obligations, imposing new duties, and attaching new disabilities with respect to marks already adopted," *Circuit City Stores*, 949 F.Supp. at 415, and its conclusion that,

> when CarMax chose its marks in September 1993, there was no federal law prohibiting use of a trademark that, although not likely to cause consumer confusion, might "dilute" a senior mark used in an entirely different market for an entirely different class of products. Relying on the law as it

3. Plaintiff cites three cases in which courts applied the Dilution Act to conduct occurring before and continuing after the enactment of the Dilution Act. *See WAWA Inc. v. Haaf,* 40 U.S.P.Q.2d 1629, 1996 WL 460083 (E.D.Pa. 1996), *aff'd*, 116 F.3d 471 (3d Cir.1997) (unpublished); *Ringling Bros. v. Utah Division of Travel*, 935 F.Supp. 763 (E.D.Va.1996); and *Intermatic,*

*Inc. v. Toeppen,* 947 F.Supp. 1227 (N.D.Ill.1996). These respective courts, however, did not address any retroactivity concerns in their disposition of the Dilution Act issues in these cases. Therefore, this Court concludes that *WAWA, Ringling Brothers,* and *Toeppen* are not helpful to the resolution of the issue before it here.

existed in 1993, CarMax selected and, for over two years, advertised and promoted, a valid legal mark.... If OfficeMax has a federal claim, it must be measured under the law of infringement and the confusion standard, not under the dilution concept created by the Dilution Act.

*Id.* at 418–19. The distinction is an important one in this case as well, in which Resorts has alleged that Defendants' conduct of using "Pinehurst" in their trade names violates both trademark infringement law and dilution law.[4]

■ Based on the foregoing discussion, then, a plaintiff may not append a claim under the Dilution Act to its case against a defendant based on allegations that the defendant's pre-enactment conduct violated separate, previously existing Lanham Act infringement provisions. The only pertinent inquiry in this case is whether Defendants' actions were illegal because of any dilutive effect they may have had under federal law prior to the enactment of the Dilution Act. Since Defendants' actions of adopting their names and putting those names into the public arena were completed prior to the effective date of the Act, it is evident that these actions did not violate any federal dilution law at the time they were accomplished. Therefore, in accordance with the Supreme Court's holding in *Landgraf* as interpreted in *Circuit City Stores*, the Court concludes that the application of the Dilution Act in this case would " 'attach[ ] a new disability[ ] in respect to transactions or considerations already past,' " *Landgraf*, 511 U.S. at 270, 114 S.Ct. at 1499–1500, 128 L.Ed.2d at 254 (quoting *Society for Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756, 767 (C.C.N.H.1814) (No. 13,156) (Story, J.) (citations omitted)), and would therefore have an impermissibly retroactive effect. Plaintiff's Motion for Preliminary Injunction is therefore denied, and its claim for dilution pursuant to 15 U.S.C. § 1125(c) is accordingly dismissed.

## III. CONCLUSION.

For the foregoing reasons, the Motion of Plaintiff Resorts of Pinehurst, Inc., for Pre-

---

**4.** Resorts' allegation that Defendants' use of "Pinehurst" in their trade names is illegal under the Lanham Act's infringement provisions is currently the subject of Plaintiff's motion for partial

liminary Injunction [Document # 3] is DENIED, and its claim for dilution under the Lanham Act is DISMISSED. Because the Court has dismissed Plaintiff's Dilution Act Complaint, all other pending motions in the "311" case are MOOT. Since these motions were also filed in the consolidated "265" case, however, these motions as they pertain to the "265" case are unaffected by the disposition of any issues in this Memorandum Opinion.

An ORDER AND JUDGMENT in accordance with this MEMORANDUM OPINION will be filed contemporaneously herewith.

### *ORDER AND JUDGMENT*

BEATY, District Judge.

For the reasons enumerated in the MEMORANDUM OPINION filed contemporaneously herewith,

IT IS ORDERED that the Motion of Plaintiff Resorts of Pinehurst, Inc., for Preliminary Injunction as filed in Case No. 3:96CV00311 [Document # 3] is DENIED, and the claim of Plaintiff Resorts of Pinehurst, Inc., for dilution pursuant to the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c), as contained in its Complaint in Case No. 3:96CV00311 shall be and the same hereby is DISMISSED. IT IS FURTHER ORDERED that all other pending motions in Case No. 3:96CV00311 are MOOT.

summary judgment before this Court, and the Court expresses no opinion as to the merits of that claim here.